CA No. 13-10354

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>RICHARD CARL BROWN,<br><br>    Defendant-Appellant. | D.C. No. 2:12-cr-097-RCJ-VCF<br>(Nevada, Las Vegas) |

Appeal from the United States District Court
for the District of Nevada

**APPELLANT'S REPLY BRIEF**

RENE L. VALLADARES
Federal Public Defender
JASON F. CARR
Assistant Federal Public Defender
411 East Bonneville Avenue, Suite 250
Las Vegas, Nevada 89101

Counsel for Appellant

## **TABLE OF CONTENTS**

**Page**

I. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. The Government's Chief Argument on the Question of the District Court's Denial of Appellant Brown's Request for New Counsel is Belied by the Record Which Establishes that Defense Counsel was Not in Fact Ready for Trial on the Date of the Substitution of Counsel Hearing. . . 1

    B. This Court's Recent Decision in *United States v. Thum* Solidifies Brown's Contention That the Terms "Transportation" and "Distribution" Must be Given Separate and Distinct Meanings.. . . . . . . . . . . . . . . . . . 5

II. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Corley v. United States, 556 U.S. 303 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 5

United States v. Mendez-Sanchez, 563 F.3d 935 (9th Cir. 2009). . . . . . . . . . . . . . . 4

United States v. Prime, 431 F.3d 1147 (9th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . 4

United States v. Thum, CA No. 13-50176 (9th Cir. April 24, 2014). . . . . . . . . . . . 6

## FEDERAL STATUTES

8 U.S.C. § 1324. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2252. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.

ARGUMENT

A. **The Government's Chief Argument on the Question of the District Court's Denial of Appellant Brown's Request for New Counsel is Belied by the Record Which Establishes that Defense Counsel was Not in Fact Ready for Trial on the Date of the Substitution of Counsel Hearing**

The government's Answering Brief (AB) primarily relies on the fact that Brown's defense counsel stated, during the substitution of counsel hearing, that he was ready for Brown's trial; set at that time for the following week. The government's brief stresses this point on at least three occasions and even includes this contention in an argument heading. (*See* AB at p.6, 9, 11, and 14; *see also* Appellant's Excerpts of Record (ER) 3-5 (defense counsel's representation that he is ready for trial).) The government's reliance on this statement is misguided as the record contains numerous indications that counsel was not in fact ready for trial on that date.[1]

/ / /

---

[1] The government also relies on the fact that Brown failed to articulate valid bases for the existence of an irreconcilable conflict with counsel. (*See* AB at pp.12, 15.) As detailed in Brown's Opening Brief (OB), Brown stated numerous grounds for the existence of a conflict including a lack of any communication from counsel or even any attempts to consult with Brown about potential trial strategy and defenses. (*See, e.g.*, ER 5-6 ("we never really discussed anything about a defense").)

The fact that there is evidence in the record that defense was not ready for trial at the date of the hearing buttresses Brown's misgivings.

As indicated in the Brown's Opening Brief, this case, due to the state of the evidence and need to parse through relatively complex computer programs and files, required the defense acquire the services of a computer forensics expert. Defense counsel revealed that they did not acquire the services of a computer expert until after the substitution of counsel hearing. (*See* OB at p.11, n.3.)

There are further indications that defense counsel was not being forthright about his statement that he was ready for trial. During trial, co-counsel Mario Fenu's father died. Fenu requested a brief trial continuance because of this tragic occurrence. The district court suggests Fenu take some time off and allow Mr. Newman to conduct witness cross-examinations. Fenu then reveals co-counsel Newman, who had announced he was ready for trial a month prior, did not know enough about the case to even cross-examine lay witnesses. (*See* ER 401.)

Later in the trial, the district expressed concern that a defense witness, Ms. Race, may be incriminating herself on the stand. The court inquires whether defense counsel had explained to the witness that she may need to consult with outside counsel about the need to exercise her Fifth Amendment right to remain silent. (*See* ER 638-39.) Fenu admits that the first time he had ever spoken to this witness was in the hallway on that very day. (*See id.* at 640.)

/ / /

2

The district court was not pleased with this disclosure. (*See id.* at 641 ("There's no good faith here on your part, sir. You failed. You did not instruct her she needed an attorney.").)

It is reasonable to posit that Brown, a former long-term boyfriend and still good friend of witness Race, was well aware of the fact that his defense counsel had not spoken with her yet on the day of the substitution of counsel hearing. This is not a trivial failing as Ms. Race was a pivotal witness for the defense. Ms. Race testified to, inter alia, being the author of incest related materials found on Brown's computer.

The Ms. Race witness incident supports Brown's expressed belief that his defense team had not conducted adequate pretrial preparation.

From a defense attorney perspective, one of the more stark indications that the defense team did not put their efforts into trial preparation is the existence of two psychological reports. (*See* CR 104, Exhibits A and B).) Both of these reports were prepared prior to Brown's trial. These reports were not admissible at trial, can hardly be considered evidence of innocence. The is no conceivable theory under which the reports could not have assisted Brown's endeavor to proceed to trial and seek an acquittal. It is telling that defense counsel expended funds on this endeavor prior to trial, and then later dunned Brown for more money when it became apparent that Brown was actually serious about his desire for a jury trial. (*Compare* ER 7-9 (Brown

3

relating to the district court defense counsel's dissatisfaction with Brown's ability to pay further attorney fees).)

Finally, the government stresses its belief that Brown's request for new counsel was untimely. Brown filed his request for new counsel on December 27, 2012. (*See* CR 41; ER 45-53.) Trial began on February 11, 2013. (*See* CR 870; ER 77 (minutes of trial, Day I).) The case law cited by the government does not support its contention that a request filed approximately six-weeks before trial is per se untimely.

The government cites *United States v. Mendez-Sanchez*, 563 F.3d 935 (9th Cir. 2009), where this Court found that a request two weeks before trial was untimely. The decision stressed, however, that "timeliness is not dispositive, and sometimes a defendant would be unable to make a motion until shortly before trial." *Mendez-Sanchez*, 563 F.3d at 942. Such an instance is a situation where "a defendant realized his or her counsel was not prepared for trial." *Id*. This is the exact allegation Brown rendered at the change of counsel hearing; an asseveration, as related above, that the record supports. *Cf. United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (stressing that no particular time period is dispositive regarding the timeliness of the request factor, rather "timeliness may depend on the reason for substitution, and its strength").

/ / /

Brown well articulated the reasons for conflict between Brown and counsel. Brown averred his counsel did not confer with him at all prior to trial; except on the question of unpaid attorney fees. Brown did not believe counsel was prepared for trial. Brown no longer trusted his attorneys. Brown's attorney agreed that there was no longer a working relationship and that he could not adequately assist Brown.

Given this reality, and the fact that a representative from the Federal Public Defender's Office was present and able to take the case right away, the district court erred in denying Brown's request for new counsel.

**B.      This Court's Recent Decision in *United States v. Thum* Solidifies Brown's Contention That the Terms "Transportation" and "Distribution" Must be Given Separate and Distinct Meanings**

Brown argues on appeal that the offense of "distributing" child pornography and "transporting" child pornography constitute distinct crimes. (*See* OB at pp.40-45.) *Arguendo*, the government can establish a distribution offense by proving a defendant knowingly let child pornography reside in a peer-to-peer shared files folder. The offense of transporting child pornography describes a different offense with different proof requirements. Transporting child pornography across state lines requires the defendant engage in an affirmative act; even if that act is only volitionally sending a file over the internet to someone residing in a different state.

/ / /

The two offense are discrete. Congress intended each to cover "different groups of wrongdoers." *Cf. United States v. Lopez*, 484 F.3d 1186, 1190-91, 1197 (9th Cir. 2007) (en banc).

This observation is substantiated by this Court's recent decision in *United States v. Thum*, CA No. 13-50176 (9th Cir. April 24, 2014), a supervised release violation case. In *Thum*, this Court found that the act of escorting an illegal alien from a restaurant to a van, knowing that the alien would be transported to Northern California, may well constitute the crime of "attempted transportation of the alien," but did not support, even under a preponderance of the evidence standard, a finding that Mr. Thum encouraged or induced an illegal alien to reside in the United States. *See United States v. Thum*, slip. op. at 7-8.

Each immigration offense codified in 8 U.S.C. § 1324 is discrete. Congress intended each separate mode of commission to "cover different groups of wrongdoers." *Id.* at 7 (citing *Lopez*, 484 F.3d 1190.) The *Thum* decision disavows an interpretation of the statute that would elide the distinctions in the statute's terms. This Court rejects the government's argument that the act of assisting the illegal alien's transportation could also constitute a violation for statute's separate offense of encouraging the alien to reside in the United States. *See id.* at 7-8. "It is axiomatic that 'a statute should be construed so that effect is given to all its provisions, so that no part will be rendered

6

inoperative or superfluous, void, or insignificant.'" *Id.* at 8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Brown voices a similar argument on appeal. The separate modes of conviction of distributing and transporting child pornography under 18 U.S.C. § 2252(a)(1), and § 2252(a)(2) require the government prove separate and distinct means of violating the statute. Each term must be given a separate meaning. The method and means of violating each respective provision are distinct. To sustain Brown's conviction for transporting child pornography, this Court must accept the government's position that "transporting" and "distribution" are the exact same offense. This Court's precedent, as affirmed in *Thum*, does not allow for this interpretation.

Brown's conviction for transporting child pornography must be reversed.

## II.

### CONCLUSION

There are two clusters of error present in this case. One flows from the district court's failure to grant Brown's request to substitute counsel. The other is a direct product of the government's novel, yet ultimately unavailing theory of prosecution.

Brown raises interesting, and more important robust, contentions on appeal. While Brown focused on two discrete issues for this Reply Brief, all of Brown's contentions as articulated in his Opening Brief are valid and warrant reversal. For all

7

of the reasons stated here and in that Opening Brief, in the interests of justice and fairness, Brown's convictions and sentences should be reversed.

## III.

## CERTIFICATE OF COMPLIANCE

The typeface used in this brief is proportionately spaced fourteen-point font. The total number of words is 1,615.

                                    Respectfully submitted,

                                    */s/ Jason F. Carr*

                                    _____
                                    JASON F. CARR
                                    Assistant Federal Public Defender

## IV.

## CERTIFICATE OF SERVICE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>RICHARD CARL BROWN,<br><br>    Defendant-Appellant. | C.A. No. 13-10354<br>D.C. No. 2:12-cr-097-RCJ-VCF<br>(Nevada, Las Vegas) |

   I hereby certify that on April 30, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using te appellate CM/ECF system.

   Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

   I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

ADDRESSEE:

  Richard Carl Brown
  Reg# 46686-048
  FCI Big Spring
  Federal Correctional Institution
  1900 Simler Avenue
  Big Spring, TX 79720

                                        */s/ Maribel Bran*
                                        _____
                                        Employee of the Federal Public Defender

                     9